Faisal Gill (SBN 263416)
Gill Law Firm
1901 Avenue of the Stars
Suite 1060
Los Angeles, CA 90067
310-418-6675
213-260-8255 (fax)
Fgill@glawoffice.com

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JAMAAL WILLIAMS             )
150 North Hudson Ave.       )
City of Industry, CA 91744    )
                              )       COMPLAINT
                              )
      vs                 )
                              )
COUNTY OF LOS ANGELES;   )
COUNTY OF LOS ANGELES SHERIFF'S )
DEPARTMENT; DEPUTY        )
DOES 1-10; SHERIFF ALEJANDRO  )
VILLANUEVA              )

## INTRODUCTION

1. On or about January 20, 2021 at around 12:44pm, at or near Santa Bianca Drive in Hacienda Heights, Mr. Williams sat in his car during his lunch break.

2. Suddenly, multiple Los Angeles Sheriff's Deputies surrounded his vehicle and opened the driver and front passenger door simultaneously, demanding for Mr. Williams to get out of his car.

3. When Mr. Williams requested that they explain to him why he needed to get out of his vehicle, the Defendant Deputies forced open Mr. William's vehicle and ripped him from the car.

1

4. They then physically assaulted Mr. Williams and unlawfully restrained him by forcing him to the ground and handcuffing him.

5. Defendant Deputies then arrested Mr. Williams for resisting arrest.

## PARTIES

6. Plaintiff, JAMAAL WILLIAMS, is, and at all relevant times mentioned herein was, a resident of the County of Los Angeles and State of California.

7. Defendant County of Los Angeles ("the County") is, and at all relevant times mentioned herein was, a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected County Board of Supervisors and/or their agents and deputies. The County is responsible for the actions, inactions, policies, procedures, practices and customs of the Los Angeles Sheriff's Department ("LASD") and its agents and employees. At all relevant times, the County was and continues to be responsible for assuring that the actions of the LASD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

8. Defendant Deputy DOE 1 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

9. Defendant Deputy DOE 2 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

COMPLAINT

10. Defendant Deputy DOE 3 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

11. Defendant Deputy DOE 4 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

12. Defendant Deputy DOE 5 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

13. Defendant Deputy DOE 6 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

14. Defendant Deputy DOE 7 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

15. Defendant Deputy DOE 8 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

16. Defendant Deputy DOE 9 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

17. Defendant Deputy DOE 10 is an employee of the LASD, who, on information and belief, without justification seized and used excessive force on Mr. Williams.

18. Defendant Sheriff Alex Villanueva, is and was, at all times relevant to this action, the LASD Sheriff and a policymaker for the Sheriff's Department. He is sued in both his individual and official capacities.

3

19. Defendant Sheriff Alex Villanueva has created an environment in the LASD which promotes the use of weapons, such as rubber bullets, and has been quoted as saying that these weapons are "designed to get someone's attention without injuring them," even though he and the Sheriff's Department are aware the high risk of injury these weapons pose.

20. Defendant Sheriff Alex Villanueva has continued to expand this violent environment within the LASD by advocating for, and rehiring, former Los Angeles County Sheriff's Deputies who have been found to use unreasonable force and fail to use de-escalation on multiple occasions.[1]

21. Defendant Sheriff Villanueva's actions and outward support for deputies who have committed egregious acts of violence and violations of civil rights has created an atmosphere within LASD that violation of civil rights is not only approved by the department, but encouraged.

22. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and

---

[1] Los Angeles Times. "L.A. County Sheriff Alex Villanueva reinstates a second deputy fired for misconduct" (April 3, 2019), https://www.latimes.com/local/lanow/la-me-sheriff-villanueva-reinstate-deputy-force-20190403-story.html, (Last visited October 25, 2021); Los Angeles Magazine. "Meet Sheriff Alex Villanueva, the Donald Trump of L.A. Law Enforcement" (July 19, 2019), https://www.lamag.com/citythinkblog/sheriff-alex-villanueva-interview/, (Last visited October 25, 2021)(Villanueva implemented "process to consider returning to duty as many as 400 more deputies and civilian employees fired under McDonnell for causes that include unreasonable use of force, lying to investigators, and domestic violence." "What the previous administration did is try to turn every act of misconduct into a potential termination case…")

COMPLAINT

that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

23. Plaintiff is informed and believes, and thereupon alleges, that at all times material herein, each of the Defendants was the agent or employee of, and/or working in concert with, his/her co-Defendants and was acting within the course and scope of such agency, employment and/or concerted activity. Plaintiffs allege that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

24. Plaintiff is informed and believe and thereupon allege, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant and each was the alter-ego of the other.

25. Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

26. Plaintiffs exhausted their administrative remedies by timely filing governmental tort claims with the County of Los Angeles on or about June 16, 2021. The County never responded to Mr. Williams' claim.

5

COMPLAINT

**JURISDICTION AND VENUE**

27. This Court has jurisdiction under 28 U.S.C. § 1343(3)-(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

28. This Court has jurisdiction of state law claims made by both Plaintiffs in this matter under 28 U.S.C. § 1367 as the state law claims are so related to the federal claims in this action with original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

29. Venue is proper in the United State District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."

30. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

**FACTUAL BACKGROUND**

31. On or about January 20, 2021, around 12:44pm, Mr. Williams was sitting in his car having lunch during his lunch break.

32. Suddenly, out of nowhere, multiple Los Angeles County Sheriff's Deputies surrounded his vehicle, opened the driver and front passenger door simultaneously, and demanded that he get out of his car.

COMPLAINT

33. Completely surprised by this incident, Mr. Williams requested that the Deputies explain why he needed to get out of the car.

34. Instead of explaining anything to him, the Deputies forced open the vehicle and ripped Mr. Williams from the vehicle.

35. Mr. Williams repeatedly asked for the Deputies to call their supervisor as he was shocked to have them use such force on him.

36. At one point, a Los Angeles Sheriff's Deputy threatened to tase Mr. Williams.

37. The Deputies forced Mr. Williams to the ground and handcuffed him.

38. Mr. Williams was sincerely afraid for his life throughout the entire ordeal, pleading for people to record the interaction in hopes the Deputies would not harm him.

39. After being subjected to this traumatic ordeal, Deputies told Mr. Williams they were looking for a robbery suspect who was an African American male based on a vague description, but that it was not him.

40. Deputies then arrested Mr. Williams for resisting arrest and taken to jail.

41. Mr. Williams had to post $2,500 in order to make $25,000 bond in order to leave jail.

42. Deputies also impounded Mr. Williams' vehicle, which Mr. Williams had to pay approximately $400 to retrieve.

43. As a result of this excessive force used by the Defendant Deputies, Mr. Williams suffered severe physical pain and emotional distress.

### COUNT I

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Unlawful Seizure

**(By Plaintiff Against All Defendant Deputies)**

44. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45. This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Plaintiff by the Fourth Amendment to the Constitution of the United States, including, but not limited to, the right to be free from unreasonable government seizure of his person.

46. At all times mentioned herein, the Defendant County of Los Angeles employed the Defendant Deputies, and provided them with official badges and identification cards which designated and described the bearers as employees of the County of Los Angeles and the Los Angeles County Sheriff's Department.

47. All of the acts of Defendants and the persons involved were done under color of state law.

48. Both prior to and during the time in which Plaintiff was stopped, detained, assaulted and battered by Defendants, Plaintiff was not armed with any kind of weapon, posed no reasonable or credible threat of violence or injury to any Defendant, and made no aggressive movements, furtive gestures, or physical movements which would suggest to a reasonable officer that he was armed with any kind of weapon or posed any sort of threat.

49. The acts of the Defendant Deputies deprived Mr. Williams of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but

not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, unlawfully seizing Mr. Williams without any lawful basis, probable cause, warrant, or any exception thereto.

50. Each of the Defendant Deputies were personally involved and an integral participant in the violation of Mr. Williams' constitutional rights. Each deputy was aware of the unlawful actions of the other Deputies as they unlawfully restrained and arrested Mr. Williams; did not object to this violation of Mr. Williams' rights; and participated in the violation by performing police functions, including meaningful participation in the arrest.

51. As a direct and proximate result of the aforementioned acts of the Defendant Deputies, Mr. Williams sustained and incurred damages including pain, suffering, and emotional injury.

52. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Mr. Williams. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant Deputy (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

53. Plaintiff is entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

9

54. The Defendant Deputies and any other involved deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles and LASD. These include policies and longstanding practices or customs in unlawful seizures where the Deputies do not have probable cause to seize an individual.

55. Sheriff Villanueva, as the official head and leader of the Sheriff's Department, was the person most responsible for the hiring, training, and supervision of the LASD deputies working under his command, and ensuring that their actions, conduct, policies, practices and customs complied with the Constitutions of the United States and the State of California. Defendant Villanueva, through his hiring, training, and supervision of the deputies, has caused an environment which promotes the use of unreasonable and excessive force.

56. The training policies of the County of Los Angeles, Sheriff Villanueva, and LASD were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including but not limited to unlawful seizures. The County of Los Angeles, Sheriff Villanueva and LASD knew that its failure to adequately train its deputies to interact with such individuals made it highly predictable that its deputies would engage in conduct that would deprive persons such as Mr. Williams of his rights.

57. The County of Los Angeles, Sheriff Villanueva and LASD was thus deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

COMPLAINT

58. Defendants County of Los Angeles, Sheriff Villenueva, and LASD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Williams by Deputies listed as DOE 1-10; that is, the County of Los Angeles' and LASD's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Williams' rights as to be the moving force that caused his injuries.

## COUNT II

**Fourth and Fourteenth Amendments: Excessive Force**

**(By Plaintiff Against All Defendant Deputies)**

59. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth.

60. This cause of action is set forth herein to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, and/or usage, of rights, privileges, and/or immunities secured to Plaintiff by the Fourth Amendment to the Constitution of the United States, including, but not limited to, the right to be free from unreasonable government seizure of his person.

61. At all times mentioned herein, the Defendant County of Los Angeles employed the Defendant Deputies, and provided them with official badges and identification cards which designated and described the bearers as employees of the County of Los Angeles and the Los Angeles County Sheriff's Department.

62. All of the acts of Defendants and the persons involved were done under color of state law.

11

63. The acts of the Defendant Deputies deprived Mr. Williams of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, using excessive force against Mr. Williams. Specifically, the Defendant Deputies used unreasonable and excessive force when they unlawfully restrained Mr. Williams by tackling him to the ground and placing him in excessively tight handcuffs.

64. Each of the Defendant Deputies was both personally involved and an integral participant in the violation of Mr. Williams' constitutional rights. Each deputy was aware of the unlawful actions of the other Deputies as they planned to use excessive force and did use excessive force against Mr. Williams; did not object to this violation of Mr. Williams' rights; and participated in the violation by performing police functions, including meaningful participation in the excessive force.

65. As a direct and proximate result of the aforementioned acts of the Defendant Deputies, Mr. Williams sustained and incurred damages including pain, suffering, and emotional injury.

66. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Mr. Williams. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant Deputy (but not

against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

67. Plaintiff is entitled to and hereby demands costs, attorneys' fees, and expenses pursuant to 42 U.S.C. § 1988.

68. The Defendant Deputies and any other involved deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles and LASD. These include policies and longstanding practices or customs in unlawful seizures where the Deputies do not have probable cause to seize an individual.

69. Sheriff Villanueva, as the official head and leader of the Sheriff's Department, was the person most responsible for the hiring, training, and supervision of the LASD deputies working under his command, and ensuring that their actions, conduct, policies, practices and customs complied with the Constitutions of the United States and the State of California. Defendant Villanueva, through his hiring, training, and supervision of the deputies, has caused an environment which promotes the use of unreasonable and excessive force.

70. The training policies of the County of Los Angeles, Sheriff Villanueva, and LASD were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including but not limited to unlawful seizures. The County of Los Angeles, Sheriff Villanueva and LASD knew that its failure to adequately train its deputies to interact with such individuals made it highly predictable that its deputies

13

would engage in conduct that would deprive persons such as Mr. Williams of his rights.

71. The County of Los Angeles, Sheriff Villanueva and LASD was thus deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

72. Defendants County of Los Angeles, Sheriff Villenueva, and LASD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Williams by Deputies listed as DOE 1-10; that is, the County of Los Angeles' and LASD's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Williams' rights as to be the moving force that caused his injuries.

## COUNT III

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Failure to Intervene

### (By Plaintiff Against All Defendants)

73. Plaintiff Williams realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

74. At all times relevant to the actions and omissions of the Defendant Deputies, each of the Defendant Deputies had a duty to intercede under the circumstances they faced, because (1) it was obvious that their fellow deputies were using excessive and unreasonable force against the passive and defenseless Plaintiff during the incident described in the foregoing paragraphs of this Complaint, and (2) each of the Defendant Deputies had an opportunity to intervene, intercede, and otherwise prevent their fellow

14

deputies' from continuing to assault Plaintiff Williams through the incident involving all of the Defendant Deputies.

75. Notwithstanding this duty to intervene, Defendant Deputies failed to take any actions to prevent, stop, interrupt, or otherwise use their words and/or actions to intervene and prevent the continued deprivations of Mr. Williams' constitutionally protected right to be free from excessive and unreasonable force, entitling Plaintiff to economic, non-economic, and punitive damages and attorneys' fees for violations of civil rights, pursuant to 42 U.S.C. §§ 1983 and 1988.

## COUNT IV

## UNRUH CIVIL RIGHTS ACT, CIVIL CODE §§ 51 et seq.

### (By Plaintiff Against All Defendants)

76. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

77. Section 51(b) of the California Civil Code provides in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their ... race ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

78. At all times relevant to this action, Mr. Williams resided in California.

79. Mr. Williams is qualified to participate in or receive the benefit of the County's services, programs, or activities.

COMPLAINT

80. The County and the LASD are business establishments within the meaning of the Unruh Civil Rights Act whose facilities, programs, and activities are open to the general public and are operated for the public benefit.

81. Mr. Williams was excluded from participation in and denied the benefits of the County's services, programs, or activities, or was otherwise discriminated against by the County by reasons of his race, such that Mr. Williams' race was a substantial motivating reason for the County's discrimination.

82. Defendants did not have a justification to assault Mr. Williams or to arrest him because he did not make any threatening gestures nor was he a threat to Defendant Deputies on the scene. The force used by the Defendant Deputies was excessive.

83. The County specifically targeted Mr. Williams and used excessive force against him even though they knew he did not pose a threat.

84. The County knew that it was substantially likely that Mr. Williams would be harmed with respect to his rights but failed to act on that likelihood, and thus acted with deliberate indifference, thereby intentionally discriminating against Mr. Williams.

85. The County's acts and omissions against Plaintiff constitute discrimination against him, intentional and through deliberate indifference, and violate the Unruh Civil Rights Act, Cal. Civil Code §§ 51 et seq., in that Mr. Williams has been denied full and equal accommodations, advantages, facilities, privileges, and services provided to persons of other races.

86. As a direct and proximate result of the aforementioned acts, including but not limited to Defendant's deliberate indifference to the violation of Mr. Williams' rights, Mr.

16

Williams suffered great physical and emotional pain and continues to suffer fear, anxiety, insomnia, humiliation, hardship, indignity, and severe mental and emotional anguish.

87. As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 et seq., as well as compensatory damages and attorneys' fees.

## COUNT V

## TOM BANE CIVIL RIGHTS ACT, CIVIL CODE § 52.1

### (By Plaintiff Against All Defendants)

88. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

89. Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution guarantee the right of persons to be free from unlawful entries, false arrests, and the use of unnecessary and excessive force on the part of law enforcement deputies.  The Defendant Deputies, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately denied each of these rights to Mr. Williams by threats, intimidation, or coercion, to prevent Plaintiff from exercising his right to be free of unlawful searches and seizures including unlawful entry, false arrest, and/or excessive force, and/or in retaliation for Plaintiff's exercise of these rights, thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code §

17

52.1. Specifically, the Defendant Deputies (1) unlawfully seized Mr. Williams without probable cause, (2) and used excessive force against Mr. Williams by tackling him, forcing him to the ground, and placing him in excessively tight handcuffs. The Defendant Deputies intended by their actions to deprive Plaintiff of his enjoyment of the interests protected by the right to be free of such conduct. The Defendant Deputies' unlawful actions were a substantial factor causing Mr. Williams to suffer severe injuries including pain, suffering, and emotional injury.

90. The County of Los Angeles, Sheriff Villanueva, and LASD are vicariously liable for its Deputies' misconduct.

91. In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Mr. Williams' rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Defendant Deputy (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

92. As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 et seq., as well as compensatory and punitive damages and attorneys' fees.

COMPLAINT

## COUNT VI

## BATTERY

### (By Plaintiff Against All Defendants)

93. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

94. On information and belief, each of the Defendant Deputies intentionally touched Mr. Williams, and/or caused him to be touched, while seizing Mr. Williams from his vehicle and tackling him to the ground.

95. Defendant Deputies thereafter intentionally touched Mr. Williams, and/or caused him to be touched, arresting Mr. Williams while placing him in excessively tight handcuffs.

96. On information and belief, each of the Defendant Deputies used unreasonable force to arrest Mr. Williams.

97. Defendant Deputies used unreasonable force when throwing Mr. Williams to the ground.

98. Mr. Williams did not consent to the Defendant Deputies' uses of force.

99. Mr. Williams was harmed by each use of force which has caused him to suffer severe injuries including pain, suffering, and emotional injury.

100.   The Defendant Deputies' uses of unreasonable force was a substantial factor in causing Mr. Williams' harm.

101.   The County of Los Angeles, Sheriff Villanueva, and LASD is vicariously liable for the actions of the Defendant Deputies.

102.    In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Mr. Williams' rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Defendant Deputy (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## COUNT VII

## NEGLIGENCE

### (By Plaintiff Williams Against All Defendants)

103.    Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

104.    The conduct of Defendants as set forth herein, was tortious in that Defendants breached their duty of care to Mr. Williams when the Defendant Deputies used excessive force to arrest Mr. Williams by throwing him to the ground and placing him in excessively tight handcuffs.

105.    As a result of the conduct of the Defendants as alleged herein, Mr. Williams sustained and incurred physical and emotional damages.

106.    The County of Los Angeles, Sheriff Villanueva, and LASD is vicariously liable for the actions of the Defendant Deputies.

107.    In doing the foregoing wrongful acts, the Defendant Deputies, and each of them, acted with conscious disregard of Mr. Williams' rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary

and punitive damages against each individual Defendant Deputy (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

1. For compensatory, general, statutory, and special damages against each Defendant, jointly and severally, in amount at least equal to $2 million and to be proven at trial;

2. Punitive and exemplary damages against individually named Defendants DOE 1-10 in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3. Prejudgment interest;

4. For costs of suit and reasonable attorneys' fees and costs as authorized by statute or law;

5. For restitution as the Court deems just and proper;

6. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

## JURY TRIAL DEMANDED

PLAINTIFF DEMANDS A JURY BY TRIAL ON ALL COUNTS.


Respectfully Submitted,

/S/ FAISAL GILL_____
Faisal Gill (SBN 463416)
Gill Law Firm
1901 Avenue of the Stars, Suite 1060

COMPLAINT

Los Angeles, CA 90067
310-418-6675
310-388-0564 (fax)
Fgill@glawoffice.com

COMPLAINT